IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT L. SAIZ,

       Plaintiff,

vs.                                                                      Civ. No. 01-858 JP/RHS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

### Proposed Findings

       1.      This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 19, 2002.[Doc.#14]   The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, age 47, alleges a disability which commenced April 15, 1996 due to degenerative disc disease, pelvic strain, and chronic pain.

       2.      The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Mr. Saiz had the residual functional capacity to perform the full range of sedentary work, and that he was therefore not disabled.  The Appeals Council denied Mr.Saiz's request for review of the ALJ's decision, thus the ALJ's decision

is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). At the time of the Commissioner's final decision, claimant was 43 years old and had a tenth grade education. His past relevant work had been as an oil field roughneck and a gravedigger.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482,1487 (10th Cir1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ denied the claimant due process; (2) the ALJ's pain analysis was incomplete and inaccurate; (3) the ALJ inappropriately applied the grids and failed to obtain vocational expert testimony.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1;

or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

6. The first four steps of the sequential evaluation process are not at issue in this case. At step five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000.

7. Plaintiff began having low back pain after pulling a stump out of the ground in November 1995. Tr.at 41-42. He sought medical treatment but he continued to have pain that made it difficult to meet the demands of his job as a gravedigger. Tr.at 32-33.

8. Mr. Saiz stated that he could walk one block on a daily basis. Tr.at 102. He could make beds, wash dishes, and cook simple meals, but was unable to sweep or run the vacuum very well. Tr.at 100. He spent part of the day watching television but was unable to sit in one position very long. Tr.at 101. He could put on his clothes but was unable to tie his shoes. Tr.at 103.

**First Alleged Error**

9. Plaintiff alleges that the ALJ's conduct at the hearing deprived him of due process because he effectively informed Mr. Saiz at the close of the hearing that he would be receiving a favorable decision and then issued a decision adverse to the claimant fifteen months later. Plaintiff contends that he would have submitted additional evidence if the ALJ had questioned the sufficiency of the medical evidence. He argues that he relied on the assurances of the ALJ to his detriment and as a result did not receive a fair hearing.

10. Due process requires that a social security disability hearing be full and fair. Bush v.Apfel, 34 F. Supp.2d 1290, 1298 (W.D.Okla. 1999). The ALJ has a duty to fully develop the record. Henrie v. United States Dept of Health & Hum. Serv., 13 F.3d 359, 360 (10th Cir. 1993). There is no indication that the ALJ failed to perform his duty in that regard. The plaintiff, who was represented by counsel, had the opportunity to present the available evidence and testify on matters which were relevant to this application. Although the ALJ's inadvertent remarks were unfortunate, the Court is not persuaded that Plaintiff's first allegation warrants remand or reversal.

**Second Alleged Error**

11. Plaintiff next alleges that the ALJ's pain analysis is incomplete and inaccurate. He argues that the ALJ erred when he found that: (1) claimant's impairments "may" cause pain; Tr.at 18, (2) his pain was only precipitated by medium to heavy lifting; Tr.at 18, (3) his pain was well controlled by medication and exercise; Tr.at 19, and that he did not experience adverse side effects from his medication. Tr.at 19.

12. The ALJ correctly found that claimant's proven impairment may cause pain. His finding that the pain is precipitated by medium to heavy lifting does not contain the word "only" and

4

does not preclude the possibility that the plaintiff also has pain at rest. Having found that the appropriate nexus does exist, he must then consider all the evidence presented to determine whether the claimant's pain is in fact disabling. Thompson, at 1488 (citations omitted). This evidence includes the medical data previously presented, any other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain. Id. Only at this point may the decision maker decide whether he believes the claimant's assertions of severe pain. Id.

13.  The ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR 88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

14.  Plaintiff's daily activities and the medical evidence support the ALJ's credibility findings as to Mr. Saiz's complaints of disabling pain. He noted that Plaintiff's usual activities were inconsistent with disabling pain and that his medical evidence contains no indication of muscle atrophy, swelling, muscle spasm, significant neurological deterioration, or weight loss.

15.  The medical record does demonstrate that some of the medications which had been prescribed during the course of his treatment by several doctors were not helpful to Plaintiff or had unacceptable side effects. Tr.at 194,195. At time of the hearing, however, Plaintiff testified that the medication he was taking was effective in reducing the severity of his pain. Tr.at 44.

16.  Disability requires more than mere inability to work without pain. To be disabling, "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any

substantial employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988). Despite the finding that Plaintiff had a potentially pain-causing impairment, the ALJ did not find objective medical evidence inconsistent with Plaintiff's ability to perform sedentary work, given the medical records and reports of both treating physicians and consultants, as well as plaintiff's daily activities Tr.at 18,19. The court finds that the credibility determination of the ALJ should be upheld.

**Third Alleged Error**

17. Plaintiff claims that the ALJ inappropriately applied the medical vocational guidelines "(grids") in this case because his spinal condition resulted in significant nonexertional limitations. He argues that his limited ability to reach in all directions and his pain are nonexertional impairments that render the ALJ's reliance on the grids improper.

18. The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education and work experience. See 20 C.F.R. Pt. 404, Suppt. P, App.2. RFC, "residual functional capacity," is defined by the regulations as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a), cited in Davidson v. Sec'y of HHS, 912 F.2d 1246, 1253 (10th Cir. 1990). The ALJ may not rely on the grids "unless the claimant [can] perform the full range of work required of that [RFC] category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." Thompson at 1488 (10th Cir. 1993) (citations omitted).

19. The ALJ determined that Mr. Saiz retained the RFC to do sedentary work. Sedentary work involves lifting no more than ten pounds at a time, not more than two hours of walking and standing a day, and six hours of sitting a day. Id § 404.1567(a); SSR 83-10. Plaintiff argues that his

6

pain became a nonexertional impairment in that it limited his ability to reach in all directions, including overhead. He contends that reaching would be an essential part of working from a seated position and an inability to reach would severely impact his ability to perform sedentary jobs. He also argues that his need to frequently change position would adversely impact his ability to perform sedentary work. Because of these limitations, he asserts that the Thompson criteria cannot be met in this case and that the ALJ should have relied on the services of a vocational expert, rather than conclusively applying the grids.

20. The Plaintiff's mobility limitations were noted on April 2,1996 by the treating physician, Dr. John Sloan, when he recommended that Mr. Saiz be released for work for "4 hours a day to 8 hours a day with no lifting greater than 10 pounds and allowing him to change his body position frequently." Tr.at 123. His attending physician's return to work recommendation form generated at the same visit stated that he was able to return to work at the sedentary level (using the § 404.1567(a) definition of sedentary work) with the added provision that he be allowed to change position frequently. Tr.at 122. On May 2, 1996, Dr. Sloan again examined Mr. Saiz and changed his recommendation, stating that he should avoid "lifting greater than 50 pounds." He went on to explain that "[t]he patient is U.S. Department of Labor medium work classification at 50 pounds and this could be advanced as the patient gets more conditioned." Tr.at 117-118.

21. On May 31, 1996, Dr. Daniel Shibuya, a neurologist, examined Plaintiff. He found that Mr. Saiz had full strength (5/5) in all muscle groups with some weakness secondary to pain and that Plaintiff's muscles had normal bulk and tone. He ordered an EMG (electromyogram) and MRI (magnetic resonance imaging). Tr.at 137. On June 10 , 1996, Dr. Shubuya again examined Mr.

Saiz and did nerve conduction studies. His letter to Dr. Sloan concerning that visit states that the EMG and nerve conduction studies were normal, but that the MRI showed some disc protrusion with compromise of the thecal sac at multiple levels, most prominently at the C-5-6 level. Tr.at 134-135.

22.     On June 12, 1996, Plaintiff was again examined by Dr. Sloan, who detected no muscle weakness and stated that Mr. Saiz did not appear to be in a great deal of distress.  He was restricted to "no lifting greater than 20 pounds at this point in time." Tr. at 199-200.

23.     Dr. Sloan's records reflect that the April 1996 work restrictions placed on Plaintiff were modified at subsequent visits. Dr. Sloan's April notation that Plaintiff would need to change his position frequently, which was not repeated at subsequent visits, is not sufficient to prove that this constitutes a significant nonexertional impairment.

24.     Dr. Nancy Nickerson, the Administration's consultant, reviewed the medical evidence and concluded that Plaintiff's RFC was in accordance with Dr. Sloan's May 2 evaluation. Tr. at 144. She opined that Mr. Saiz had occasional postural limitations with regard to climbing, balancing, stooping, kneeling, crouching and crawling. Tr.at 140.  No treating physician made a similar statement.

25.     Even if the statement by the Agency's consultant is evidence of the postural limitations claimed by Mr. Saiz, the presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988). " [P]ostural limitations or restriction related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching or crawling would not usually erode the occupational base for a full range of unskilled sedentary work

8

significantly because those activities are not usually required in sedentary work." SSR 96-9p. A sedentary job is performed primarily in a seated position and "by its very nature, work performed primarily in a seated position entails no significant stooping."SSR 83-10.

26. Substantial evidence supports the Commissioner's decision that Plaintiff could perform the full range of sedentary work. If the nonmedical evidence is contradicted by the medical evidence, or is otherwise not credible, then the ALJ would have reason to apply the grids. Huston v. Bowen, 838 F.2d 1125, 1131 (10th Cir. 1988). There is substantial evidence to support the ALJ's finding that Plaintiff's testimony was not entirely credible and that he retains the residual functional capacity to do sedentary work. Nonexertional factors have not significantly altered this work capacity. The ALJ did not err in applying the grids to Plaintiff resulting in a finding of not disabled.

27. In conclusion, the Court finds that (1) the ALJ's conduct at the hearing did not deprive the claimant of due process; (2) the ALJ's analysis of the claimant's pain was supported by substantial evidence: (3) the ALJ properly applied the grids in this case and was not required to obtain testimony from a vocational expert.

**Recommendation**

For these reasons, the Court respectfully recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing [Doc #14 ] be denied and the Commissioner's decision to deny Plaintiff's claims affirmed.

The parties shall be given the opportunity to object as described in 28 U.S.C.

§ 636(b)(1)(C).   Objections shall be filed within ten days of the date of entry of the proposed disposition.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE